181 N.J. Super. 482 (1981)
438 A.2d 355
JASON MCKENNA, AN INFANT BY HIS GUARDIAN AD LITEM, EDWARD MENKEVICH AND EDWARD MENKEVICH AND CATHERINE MENKEVICH, INDIVIDUALLY, PLAINTIFFS,
v.
JOAN H. WISKOWSKI, DIRECTOR, DIVISION OF MOTOR VEHICLES OF STATE OF NEW JERSEY AND MONARCH INSURANCE COMPANY OF OHIO, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided August 26, 1981.
*484 Louis J. Kotlikoff for plaintiff (Taylor, Kotlikoff, Schwartz & Taylor attorneys).
Robert N. Kaplan for defendant Wiskowski (Yampell & Cosentino attorneys).
Murray Miller for defendant Monarch Insurance Company (Bennett & Bennett attorneys).
DEIGHAN, J.S.C.
This is a declaratory judgment action to determine eligibility for personal injury protection (PIP) benefits under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1, et seq. The minor plaintiff, Jason McKenna, age seven, sustained serious personal injuries arising out of a moped-automobile accident, the hospital bill alone amounting to $6,827.89. The facts are not in dispute; all parties move for summary judgment.
On July 12, 1980, Jason McKenna was a passenger on a moped-type vehicle with an engine displacement of 49cc. operated by Robert Sylvester and owned by Donald Giandomenico *485 which was involved in a collision with a private passenger automobile owned and operated by Evelyn F. Lloyd. The Lloyd vehicle was insured for liability as well as PIP coverage with defendant Monarch Insurance Company of Ohio. The moped was insured by Foremost Insurance Company for liability only, with no PIP coverage.[1]
Jason McKenna resides with his guardians, Edward and Catherine Mankevich, neither of whom owned a private passenger automobile at the time of the occurrence and consequently have no PIP coverage. The owner of the moped, Donald Giandomenico, is insured under a homeowners policy with Farmers Mutual Insurance Company (Farmers) which had medical coverage. Farmers is not a party to these proceedings. Since Monarch has disclaimed and there apparently is no other insurance coverage, plaintiffs institute this action against Joan H. Wiskowski, Director of Division of Motor Vehicles, for a claim under the Unsatisfied Claim and Judgment Fund Act, N.J.S.A. 39:6-61 et seq. (Fund).
The Fund contends that it is only required to pay when there is a failure to carry insurance required by law. Since PIP coverage is not required for the moped and the automobile and the moped both carry the required public liability insurance, The Fund concludes that there can be no claim against it. Alternatively, the Fund argues that the minor plaintiff was an injured pedestrian under the definition of the PIP statute, N.J.S.A. 39:6A-2 h., and qualifies for PIP coverage under the Monarch policy. Both defendants further contend that medical pay benefits are available to plaintiffs, under the homeowners policy issued by Farmers to Donald Giandomenico. See Aetna Ins. Co. *486 v. Weiss, 174 N.J. Super. 292 (App.Div.) cert. den. 85 N.J. 127 (1980).
Plaintiffs contend that the minor plaintiff was involved in an accident with a New Jersey registered private passenger automobile and that they are entitled to PIP benefits under the doctrine of Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 481-482 (App.Div. 1976) and Harlan v. Fidelity & Casualty Co., 139 N.J. Super. 226, 229 (Law Div. 1976). See, also, Gerber v. Allstate Ins. Co., 161 N.J. Super. 543, 547, 548 (Law Div. 1978), where PIP coverage was upheld when decedent, while operating a motorcycle, swerved and avoided contact with an automobile but struck a truck. Notwithstanding the fact there was no contact with the automobile, the court held that death resulted from an accident "involving an automobile." Plaintiffs also join with the Fund and assert that Jason McKenna was a pedestrian within the definition of the No Fault Act.
The first point to be dealt with is plaintiffs' contention concerning the applicability of Hoglin and Harlan. At first, the broad language of Hoglin may seem to indicate that PIP coverage is afforded to plaintiffs in the present case.
[A] literal reading of N.J.S.A. 39:6A-4 evidences a clear legislative intent to provide coverage to such class of persons when they sustain injury as a result of any accident involving an automobile. [144 N.J. Super. at 480; emphasis in original]
Upon closer analysis, however, while the facts concerning the accident are the same, the claim was made by plaintiffs against their own insurance carrier.
The No Fault Act, N.J.S.A. 39:6A-4, requires every automobile liability insurance policy to provide additional coverage for the payment of benefits, without regard to negligence, liability or fault, to certain classes of persons who sustain bodily injuries as a result of an accident involving an automobile. The classification of injured persons covered by the law is limited to (1) the named insured and members of his family residing in his household; (2) passengers occupying the automobile of the named insured; (3) persons using the automobile of the named insured *487 with his permission, and (4) pedestrians injured by the insured's automobile or by being struck by objects propelled by or from that automobile. See Hoglin, supra, 144 N.J. Super. at 480.
N.J.A.C. 11:3-7.4 requires that: "The policy form or endorsement providing the personal injury protection benefits shall provide that Section 4 benefits [N.J.S.A. 39:6A-4] shall be afforded by the insurer of the injured person." [emphasis supplied]. Under this, first party coverage is mandated in that each insured collects PIP benefits from his own insurer even if the insured is injured while a pedestrian. The insurer of an injured individual provides primary coverage and the insurer of an automobile provides secondary coverage. See Iavicolli, No Fault & Comparative Negligence in New Jersey, 118-119 (1973). Therefore, PIP coverage provides first-party coverage  that is, each party primarily collects PIP benefits from his own insurer. See Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 386 (1977).
In Hoglin, Harlan and Gerber a collision occurred between the operator of a motorcycle and an automobile. In all three cases a claim for PIP benefits was made and recovery was permitted under the No Fault Act even though all three were operating motorcycles. But in each case suit was instituted against plaintiffs own insurance carrier as an insured either by being a named insured or by virtue of being a member of the family and residing in the household of the named insured; each was therefore classified as an injured person under his own insurance policy. In the present case plaintiffs have no automobile policy of their own to qualify as an injured person as in Hoglin, Harlan and Gerber. The only common denominator in the present case with those cases is that the injuries have been sustained as a result of an accident involving an automobile.[2]
*488 Here plaintiffs are not suing their own insurance carrier for first-party coverage. They must therefore look to the automobile PIP as secondary coverage. Under the automobile PIP coverage plaintiffs are not the named insured or members residing in the insured's household; they are not passengers occupying the automobile of the named insured; they are not persons using the automobile of the named insured with his permission and they therefore cannot qualify as an injured person covered by the No Fault Act under these provisions. It remains to be seen whether the minor plaintiff is a "pedestrian" under the automobile insured by Monarch, as contended by both the Fund and plaintiffs.
The word "pedestrian" in the Motor Vehicle Act is defined as a person afoot. N.J.S.A. 39:1-1. Under the No Fault Act the definition of a "pedestrian" has been expanded to mean "any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways..." N.J.S.A. 39:6A-2 h. Plaintiffs and the Fund argue that an occupant of a vehicle is a pedestrian if (1) the vehicle is propelled by muscular power or (2) the vehicle is designed primarily for use on highways. It is noted that the definition is in the conjunctive and not the disjunctive, so that the vehicle must meet both requirements, that is, propelled by muscular power and designed primarily for the use on highways. They argue that a bicyclist is a pedestrian under the No Fault Act because it is a vehicle propelled by muscular power. It would appear that a bicyclist would indeed be classified as a pedestrian under this definition. They conclude that the moped occupied by the minor plaintiff, like a bicycle, may also be propelled solely by muscular power and therefore comes within the provisions of the act.
*489 But plaintiffs make no contention that the moped was in fact being operated by muscular power at the time of the accident. Furthermore, it is obvious from a review of the police report that the moped was being operated by motor power, not by muscular power at the time of the accident. The operator of the moped received tickets for moving motor vehicle violations. Moreover, the accident occurred on a public highway at the intersection of Grant and Cattell Avenue in Collingswood, New Jersey. Under N.J.S.A. 39:4-14.3 d. the operator of a moped is required to have a valid driver's license to operate a motorized bicycle. Every person operating a motorized bicycle upon a public road or highway is subject to the duties applicable to the driver of a motor vehicle under the Motor Vehicle Act. Because of the licensing provision and the permission to operate a moped on public highways, it is obvious that mopeds are designed primarily for use on highways.
A moped operator may be found guilty of driving while under the influence of intoxicating beverages when operating a moped on a public road and is subject to the same standard of conduct and care as the operator of a motor vehicle. State v. Lyons, 152 N.J. Super. 533, 539 (Cty.Ct. 1972), aff'd 159 N.J. Super. 100 (App.Div. 1978). A statute will not be construed so as to reach an absurd or anomalous result. Robson v. Rodriquez, 26 N.J. 517, 528 (1958). It is held that a person riding as a passenger on a moped being operated by motor power is not a pedestrian under the No Fault Act. Therefore, plaintiffs have no claim for medical benefits under PIP coverage against Monarch, the insurance carrier for the automobile involved in the collision with the moped.
Lastly is the question whether plaintiffs may recover medical benefits under PIP coverage of the No Fault Act from the Fund. The Unsatisfied Claim and Judgment Fund Act provides for the establishment, maintenance and administration of a fund for the payment of damages for injury to or death of certain persons, and for damages to property arising out of the *490 ownership, maintenance or use of motor vehicles in New Jersey in certain cases. N.J.S.A. 39:6-61 et seq. It was passed along with other legislation as part of a comprehensive scheme to afford some financial protection to innocent victims of motor vehicle accidents. Indemnity Ins. Co. of North Amer. v. Metropolitan Cas. Ins. Co., 33 N.J. 507, 512-513 (1960). The primary purpose of the statute is to provide a measure of relief to persons who sustain losses inflicted by financially irresponsible or unidentified owners and operators or motor vehicles where such persons would otherwise be without remedy, provided the requirements of the statute are met. Douglas v. Harris, 35 N.J. 270, 279 (1961); Corrigan v. Gassert, 27 N.J. 227, 233 (1958).
In 1972 The Unsatisfied Claim and Judgment Fund Law was amended to extend payments for PIP benefits. N.J.S.A. 39:6-86.1. This amendment provides, among other things, that when any person qualified to receive payment under the Fund suffers bodily injury arising out of the operation or use of an automobile registered in this State, for which PIP benefits under the New Jersey Automobile Reparation Reform Act would be payable to such person if PIP coverage were in force, and the injuries resulting from such automobile accident are not satisfied due to the PIP coverage not being in effect with respect to such automobile, then the Fund shall provide benefits under certain specific conditions. It is again noted that the amendment subjecting the Fund to claims for PIP benefits is limited and restricted to an automobile accident. This, of course, is consistent with the definition of "automobile" in N.J.S.A. 39:6A-2 a. As has been pointed out (footnote 1), a moped does not qualify as an automobile under the No Fault Act.
The Unsatisfied Claim and Judgment Fund Law defines an "uninsured motor vehicle" as "a motor vehicle as to which there is not in force a liability policy meeting the requirements of ... the Motor Vehicle Security-Responsibility Law..." N.J.S.A. 39:6-62. Both vehicles involved in the collision carried liability *491 policies meeting the requirements of the Motor Vehicle Security-Responsibility Law: the moped is not required to carry no fault insurance and the automobile is fully insured and does carry no fault insurance, but plaintiffs do not fall within the class of persons who may recover PIP benefits under the No Fault Act. Neither vehicle was uninsured inasmuch as they had the liability and no fault insurance as required by the No Fault Act and the Motor Vehicle-Responsibility Law. cf. Gorton v. Reliance Ins. Co., 77 N.J. 563, 572 (1978).
In view of the liberal policy of the courts to seek and sustain insurance coverage, the result reached herein may seem anomalous. But the Unsatisfied Claim and Judgment Fund Law does not reflect an intention to make every claimant completely whole. Rather, it provides some measure of relief to those persons who come within the class intended to be protected. But before coverage can be extended to any applicant, he must clearly demonstrate that he is a member of the class for whose benefit the Fund was established. Wormack v. Howard, 33 N.J. 139, 143 (1960).
In construing a statute, a court has the responsibility to determine what the legislature intended rather than to apply a meaning which appears fairer as the particular statute is used in practice. Matawan Boro. v. Monmouth Cty. Tax Bd., 51 N.J. 291, 298 (1968). Regardless, of sympathies, this court must interpret and enforce the legislative will as written and may not, under the guise of statutory interpretation, substitute a different meaning, even though the court might regard such an alternative as more desirable. State v. Nappi Trucking Corp., 149 N.J. Super. 314, 317-318 (Cty.Ct. 1977).
It is not necessary to determine the contention of both the Fund and Monarch that plaintiffs may recover reimbursement for medical payments through Farmers homeowners policy covering the operator of the moped, Donald Giandomenico. Aetna Ins. Co. v. Weiss, supra.
*492 An order may be presented by the attorneys for the Fund granting summary judgment in favor of both defendants and dismissing the complaint of plaintiffs.
NOTES
[1] N.J.S.A. 39:4-14.3e requires every motorized bicycle to maintain liability insurance coverage, insuring against loss resulting from liability imposed by law for bodily injury. The act makes no reference to no fault coverage. The No Fault Act, N.J.S.A. 39:6A-4, requires coverage only under automobile liability insurance policies. The No Fault Act applies only to "automobiles" as defined in N.J.S.A. 39:6A-2; Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 86 (1981), and a moped does not fit within the statutory definition.
[2] Compare Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981),

(where plaintiff as an insured under his wife's automobile insurance, obtained PIP benefits when he was in an accident involving an automobile while he was operating a commercial truck) with Bingham v. Home Indemn. Co., 146 N.J. Super. 166, 168-169 (Law Div. 1976), (where plaintiff while operating a motorcycle collided with a commercial motor vehicle. Since neither the motorcycle nor the commercial vehicle was an "automobile" as defined in the act, there was no PIP coverage).