WILLIAM E. LANE, AN INFANT BY HIS GUARDIAN AD LITEM, REMBERT LANE AND REMBERT LANE, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 2, 1984—Decided October 25, 1984.

Before Judges MICHELS, PETRELLA and BAIME.

*Horowitz, Bross, Sinins & Imperial,* attorneys for appellants (*Robert R. Cary,* of counsel and on the brief).

*Enright, Porter, Lenney & McGrath,* attorneys for respondent (*William L. Bracaglia,* of counsel and on the brief).

The opinion of the Court was delivered by

MICHELS, P.J.A.D.

Plaintiffs, William E. Lane, an Infant by his Guardian *Ad Litem,* Rembert Lane, and Rembert Lane, Individually, appeal from a judgment of the Law Division in favor of defendant Prudential Property & Casualty Insurance Company. Plaintiffs sought reimbursement under the Basic Personal Injury Protection Endorsement (PIP) provisions of an automobile policy issued to Willie Barr (Barr), the owner and operator of a passenger vehicle with which the infant plaintiff collided while riding his minibike. Plaintiff claimed entitlement to PIP benefits on the ground that he was a pedestrian because he was not

an occupant of a vehicle designed primarily for use on the highway.

The facts essential to a resolution of the question involved have been stipulated. The accident occurred on March 30, 1981 when the infant plaintiff, who was operating a two-wheeled motorized vehicle, commonly known as a minibike, on a public street in Newark collided with a private passenger vehicle owned and operated by Barr. Barr's motor vehicle was covered by a policy of insurance issued by defendant. The minibike in question was being propelled by a motor at the time of the accident and, indeed, could not be propelled other than by use of the motor. This motor, an internal combustion engine, was activated by a pull chain. The proofs established that minibikes such as the one involved in this accident, can travel 30 to 40 miles per hour on public streets. Plaintiffs' minibike, however, had no speedometer at the time of the accident. Moreover, although the vehicle was equipped with a handbrake, it had been disconnected some time prior to the accident; and it bore no license plate, headlights, taillight or turn signals. The proofs did not show whether the minibike was manufactured in that condition or had been subsequently modified.

■ Defendant denied coverage, contending that the infant plaintiff was not eligible for PIP benefits because he was not a pedestrian. Defendant argued that the infant was occupying a motor vehicle propelled by other than muscular power and which was designed primarily for use on highways and therefore did not fall within the definition of a "pedestrian" contained in the New Jersey Automobile Reparation Reform Act, commonly referred to as the "No Fault Law." *N.J.S.A.* 39:6A–1 *et seq.* Following a bench trial, Judge Loftus in the Law Division held that plaintiffs failed to sustain their burden of proving that the infant was a "pedestrian" within the meaning or intendment of the definition of that term as contained in the No Fault Law. We agree and affirm.

At the time of the accident *N.J.S.A.* 39:6A–4 mandated that a motor vehicle liability policy with respect to an automobile registered or primarily garaged in New Jersey would provide additional personal injury protection coverage as provided in the New Jersey Automobile Reparation Reform Act. *N.J.S.A.* 39:6A–4 of the No Fault Law, which was in effect at the time of the accident, provided, in pertinent part: [1]

> Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. ' ' '

The purpose of our No Fault Law, as of most no fault legislation, is to afford reparation or at least partial reparation for the objectively provable economic losses resulting from automobile accidents. Our law requires prompt payment of

---

[1]*N.J.S.A.* 39:6A–4 was most recently amended by *L.*1983, *c.* 362, § 7, effective October 4, 1983, to read as follows:

> Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or, as a pedestrian, being struck by an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile ...

medical expenses, loss of wages, essential services, survivor benefits, and funeral expenses to certain classes of persons injured in an automobile accident without regard to negligence, liability or fault and without having to await the outcome of protracted litigation. *N.J.S.A.* 39:6A–4 and *N.J.S.A.* 39:6A–5. *See Hoglin v. Nationwide Mut. Ins. Co.,* 144 *N.J.Super.* 475, 479–480 (App.Div.1976). The classification of injured persons covered by the law was limited to (1) the named insured and members of his family residing in his household, (2) passengers occupying the automobile of the named insured, (3) persons using the automobile of the named insured with his permission, and (4) pedestrians injured by the named insured's automobile or by being struck by objects propelled by or from that automobile. *N.J.S.A.* 39:6A–4; *Hoglin v. Nationwide Mut. Ins. Co.,* 144 *N.J.Super.* at 480.

Here, plaintiffs seek PIP benefits under the automobile policy issued to Barr by defendant, not under any policy issued to them. Consequently this entitlement to benefits is dependent upon the infant plaintiff being classified as a "pedestrian." In this respect, the theory of recovery here is different from that advanced in *Hoglin v. Nationwide Mut. Ins. Co.,* 144 *N.J.Super.* 475, and *Harlan v. Fidelity & Casualty Co.,* 139 *N.J.Super.* 226 (Law Div.1976), wherein PIP benefits were sought either by the insured or a member of his family residing in his household.

*N.J.S.A.* 39:6A–2.h of the No Fault Law in effect at the time of the accident defined the term "pedestrian" as follows: [2]

> h. "Pedestrian" means any person who is not occupying a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks and includes any person who is entering into or alighting from such a vehicle.

---

[2]The definition of the term "pedestrian" contained in *N.J.S.A.* 39:6A–2.h was amended by *L.*1983, *c.* 362, § 6, effective October 4, 1983 to read as follows:

> h. "Pedestrian" means any person who is not occupying, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks.

Thus, for plaintiffs to be entitled to PIP benefits they must establish that the infant plaintiff was a pedestrian within the meaning of the No Fault Law, that is, he was a person who was not occupying entering into, or alighting from a motor vehicle propelled by other than muscular power and designed primarily for use on the highways. Here the proofs are uncontroverted that the minibike the infant plaintiff was operating was propelled by other than muscular power. It was stipulated and the trial judge found that the minibike could not be propelled by muscular power but can only be propelled and indeed was propelled at the time of the accident by a motor. The trial judge further found that the minibike was designed primarily for use on the highway. In reaching this conclusion, she stated:

> I am satisfied that based upon the evidence that has been introduced in this court that the only reasonable use that this could be considered to be for was for transportation under the circumstances. And for me to conclude that it wasn't intended for that use would be just a conjecture.
>
> Certainly, the vehicle with the internal combustion engine that goes 30 to 40 miles per hour is intended to be used on a public street, although it may not technically at the time it is found meet all the safety requirements that are contained in the particular statutory law.

The findings and conclusions of the trial court that the infant plaintiff was not a pedestrian within the meaning of our No Fault Law and therefore not entitled to PIP benefits because he was operating a vehicle propelled by other than muscular power and designed primarily for use on the highways is amply supported by the proofs and there is no sound reason or justification for disturbing them. *Leimgruber v. Claridge Associates, Ltd.*, 73 *N.J.* 450, 455–456 (1977).

Moreover, the conclusions reached by the trial judge are legally sound and consistent with the principles discussed in *Laino v. Nationwide Mutual Fire Ins. Co.*, 169 *N.J.Super.* 65 (App.Div.1979). There we held that a minibike was a "motorcycle" within the meaning of *N.J.S.A.* 39:3–4, and as such was a motor vehicle designed for travel on public roads and subject to motor vehicle registration. *See also McKenna v. Wiskowski,*

181 *N.J.Super.* 482 (Ch.Div.1981), wherein it was held that a moped being operated by motor power was designed primarily for use on the highway, and therefore its operator was not a pedestrian and could not recover PIP benefits under the No Fault Law. The fact that the infant plaintiff's minibike involved here did not have a license plate and may not have been registered at the time of the accident did not render the vehicle anything less than a motor vehicle "designed primarily for use on highways." Additionally, that the minibike did not have a license plate, headlights, taillight or turn signals and that its handbrake had been disconnected does not mitigate against the trial judge's finding that it was "designed primarily for use on highways." The absence of these items merely reflected upon the safety of its use on the highways. The important criteria in resolving the question of plaintiffs' entitlement to PIP benefits are that the vehicle was capable of traveling 30 to 40 miles per hour and could not be propelled other than by a motor. Plainly there are no proofs from which it could reasonably have been concluded that the minibike was designed for recreational off-the-road use, such as those vehicles commonly called "dirt bikes."

Finally, we point out that *Government Employees' Ins. Co. v. Daniels,* 180 *N.J.Super.* 227 (App.Div.1981), relied upon by plaintiffs, is readily distinguishable and does not compel a conclusion contrary to that reached by the trial judge. In the *Daniels* case we were dealing with the issue of whether a dirt bike was an uninsured motor vehicle embraced by the mandatory coverage provisions of *N.J.S.A.* 17:28–1.1 and *N.J.S.A.* 39:6–62, not whether the PIP coverage provisions of our No Fault Law applied. More importantly, the dirt bike, as distinguished from the minibike here involved, could not be used on the highway because it was equipped with spiked, deep-knobbed tires that would cause it to slide out of control on a paved highway. Additionally, we held that the dirt bike was strictly an off-highway recreational vehicle, and not a vehicle primarily

designed for use on our highways. *See Tomei v. Ins. Co. of No. America,* 194 *N.J.Super.* 400 (Law Div.1984).

Accordingly, the judgment is affirmed.